**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rosanne Michelle Schnapp,<br><br>    Plaintiff,<br>vs.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-22-00664-PHX-SPL<br><br>**ORDER** |

Plaintiff Rosanne Michelle Schnapp ("Plaintiff") seeks judicial review of the denial of her application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). Before the Court are Plaintiff's Opening Brief (Doc. 14), Defendant Commissioner of Social Security Administration's ("Defendant") Response Brief (Doc. 18), and Plaintiff's Reply Brief (Doc. 19). Upon review, the Court vacates the Administrative Law Judge's ("ALJ") decision (AR[1] at 26–38) and remands for further proceedings consistent with this Order.

**I. BACKGROUND**

On October 31, 2019, Plaintiff filed Title II and Title XVI applications for disability insurance benefits and supplemental security income benefits, alleging a period of disability beginning on November 20, 2018. (AR 29). Her claim was initially denied on May 12, 2020, and again upon reconsideration on October 28, 2020. (*Id.*). Plaintiff testified

---

[1] Administrative Record (*see* Doc. 10).

at a telephonic administrative hearing on April 13, 2021 (AR 84–118), after which the ALJ found Plaintiff was not disabled from November 20, 2018 through April 29, 2021 (AR at 38). In making this finding, the ALJ concluded that Plaintiff passed the first four steps in demonstrating a disability: (i) Plaintiff has *not* engaged in substantial gainful activity since the alleged onset date (AR 31); (ii) Plaintiff has two "severe" medically determinable impairments (traumatic brain injury and migraine) (AR 32); and (iii) Plaintiff does *not* have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations, and Plaintiff has the residual functional capacity ("RFC") to perform light work with a few specific exceptions (AR 31–34); and (iv) Plaintiff is *unable* to perform any past relevant work (AR 36). However, at step five of the analysis, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" and that "[a] finding of 'not disabled' is therefore appropriate." (AR 37).

On March 30, 2022, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the agency's final decision. (AR at 1). On April 20, 2022, Plaintiff timely filed this action for review of the ALJ's decision. (Doc. 1). On July 5, 2022, the Court received the administrative record. (Doc. 10). On November 2, 2022, Plaintiff filed her Opening Brief (Doc. 14). On December 22, 2022, Defendant filed its Response Brief (Doc. 18). On January 5, 2023, Plaintiff filed her Reply Brief (Doc. 19). This Court has fully reviewed the parties' briefing and the medical record and will discuss the pertinent medical evidence in addressing the issues raised by the parties.

**II.   LEGAL STANDARD**

A person is considered "disabled" for the purpose of receiving social security benefits if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the

decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520(a)). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Id.* At step *one*, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. § 404.1520(a)(4)(i). At step *two*, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). At step *three*, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in the regulations.[2] § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"). §§ 404.1520(e), 416.920(e). At step *four*, the ALJ determines whether the claimant's RFC precludes her from performing her past relevant work. § 404.1520(a)(4)(iv). If so, the ALJ proceeds to the *fifth* and final step, where they determine whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

---

[2] The impairments "listed in the regulations" are found in Appendix 1 to Subpart P of 20 C.F.R. Part 404.

### III. DISCUSSION

Plaintiff argues that the ALJ erred by (1) rejecting Plaintiff's symptom testimony and (2) finding the opinions of the non-examining state agency physicians to be persuasive. The Court finds that the ALJ erred with respect to the first issue and therefore does not address the second issue, as Plaintiff concedes that it is moot as a result. (Doc. 14 at 12).

An ALJ must perform a two-step analysis to determine the credibility of a claimant's pain and symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. If the claimant meets this burden and there is no evidence of malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the testimony. *Id.* at 1036. "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.").

Here, Plaintiff refers to numerous medical records showing her alleged symptoms over the relevant period (between November 2018 and April 2021), including chronic headaches and migraines with throbbing and stabbing pain, bulging sensations and pressure behind her right eye exacerbated by exposure to light and eye movement, blurred vision, occasional memory loss, confusion, slowed mental processing, nausea, dizziness, sleep disturbances, visual disturbances, difficulty with word finding and concentration, increased irritability and emotional sensitivity, low back and neck pain, speech and motor skills issues, occasional vomiting, exacerbated headache pain when turning her head or while

driving, noise sensitivity, limited cervical spine range of motion, limited daily functions, vertigo, seizure-like symptoms with shaking, and anxiety and depression. (Doc. 14 at 3–5 (citing AR 429, 431, 433–34, 436, 450, 459, 467, 469, 472, 491–92, 505, 508, 531, 534, 539, 606–07, 611, 620, 621)). At the Hearing, Plaintiff testified to many of these symptoms, including her frequent (at least three times per week) and unpredictable migraines, pain in her neck when doing activities with her hands, inability to look down or stay in one position for long periods of time, her frequent need for rest breaks, light and noise sensitivity especially in public, difficulties with speech and word recall, vomiting, and her need to lie down for one to two hours or even the remainder of the day whenever she had a migraine. (*See* AR 97–98, 104, 106–10).

After reviewing the medical record and considering Plaintiff's hearing testimony, the ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 34). The ALJ explained that Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms was inconsistent "because [Plaintiff]'s alleged physical limitations are not well supported by the record." (*Id.*). The ALJ found that Plaintiff's allegations of disabling pain and limitations were out of proportion with several aspects of the record, including "the nature, location, onset, duration, frequency, radiation, and intensity of [Plaintiff]'s pain[;] . . . the type, dosage, effectiveness, and adverse side effects of any pain medication; other treatment, other than medication, for relief of pain; functional restrictions; and [Plaintiff]'s daily activities." (*Id.*).

After making these general conclusions, however, the ALJ "drift[ed] into a discussion of the medical evidence" and failed to meaningfully explain how such evidence contradicted Plaintiff's symptom testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). The ALJ failed to even identify the specific symptom testimony that he found uncredible; this failure was no slight oversight either, given the lengthy list of

symptoms Plaintiff alleges. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quotations and citation omitted) ("General findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); *Perini v. Comm'r of Soc. Sec. Admin.*, No. CV-20-02427-PHX-MTL, 2022 WL 740925, at *3 (D. Ariz. Mar. 11, 2022) (emphasis added) ("This requirement [that ALJ's discrediting of symptom testimony be supported by specific, clear, and convincing reasons] must be fulfilled as to *each* discounted symptom, rather than the symptoms collectively."); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (emphasis added) ("We will explain *which* of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and *how* our evaluation of the individual's symptoms led to our conclusions."). Defendant posits that the ALJ relied on contradictions between Plaintiff's level of activity and subjective complaints, the fact that Plaintiff responded well to treatment, the fact that Plaintiff unilaterally stopped taking prescribed medications, and inconsistencies with the medical record. (Doc. 18 at 5).

First, it does not appear that the ALJ found any contradictions between Plaintiff's level of activity and her symptom testimony. The ALJ's discussion of Plaintiff's activities that Defendant's Response refers to—(*see* Doc. 18 at 8–9)—is found in a different section, preceding the one in which the ALJ discusses Plaintiff's symptom testimony, and more importantly, does not identify any inconsistencies between those activities and Plaintiff's reported symptoms. Specifically, the ALJ was discussing the fourth area of functioning in the "paragraph B" criteria, writing:

> [T]he claimant also stated that she is able to handle self-care and personal hygiene. Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene and normal mood and affect. Therefore, the claimant has mild limitations in her ability to adapt or manage herself.

(AR 33 (citations omitted)). Defendant's Response attempts to draw contradictions between Plaintiff's ability to handle her own daily needs such as hygiene and grooming and her symptom testimony, but the Court must "review the ALJ's decision based on the

reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

Setting aside the above paragraph found in a separate, preceding section, the *only* example provided by the ALJ of an activity contradicting or undermining Plaintiff's symptom testimony was the ALJ's brief reference to Plaintiff's "regular participation in yoga." (AR 35). As Plaintiff points out, (*see* Doc. 19 at 7), the ALJ did not elaborate on Plaintiff's participation in yoga—such as how long each yoga session lasted, what constitutes "regular" participation (*i.e.*, how often she did yoga), the nature or extent of the yoga session—or otherwise explain exactly how Plaintiff's participation in yoga demonstrated that her symptoms were not of the severity that she claimed. Without such explanation, the Court cannot say that the ALJ supported his credibility finding by simply pointing out that Plaintiff regularly participated in yoga; at the least, the ALJ should have explained that the yoga participation amounted to a "substantial part" of her day and that it involved "physical functions that are transferrable to a work setting." *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (emphasis in original) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)) ("With respect to daily activities, this court has held that if a claimant 'is able to spend a *substantial part* of her day engaged in pursuits involving the performance of physical functions that are transferrable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'").[3] Aside from this passing reference to yoga, there is no other

---

[3] "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled. . . . In addition, activities such as walking in the mall and swimming are not necessarily transferable to the work setting with regard to the impact of pain. A patient may do these activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." *Vertigan*, 260 F.3d at 1050 (citation omitted) (emphasis in original).

indication that the ALJ discredited Plaintiff's symptom testimony based on inconsistences with her daily activities or overall activity level.

Second, Defendant's argument that the ALJ supported his credibility assessment by pointing out that Plaintiff responded well to treatment, (*see* Doc. 18 at 8), is a generous characterization of the ALJ's reasoning. The ALJ never explicitly stated this. Rather, the ALJ merely stated that "treatment notes from March 25, 2020, noted that [] the claimant reports her headaches are less severe and less frequent," without any mention of whether such improvement was actually the result of treatment. (AR 35). The ALJ's purported "treatment" justification stopped there and failed to include any other examples of Plaintiff responding well to treatment in a manner which undermined her symptom testimony. Moreover, the ALJ entirely failed to explain whether or how this single examination report from March 2020 was meaningfully inconsistent with Plaintiff's symptom testimony. Without more, it is unclear how much less severe or how much less frequent Plaintiff's headaches had become; the headaches may *still* have been debilitating and frequent, even after the improvement. Even assuming that the headaches had subsided to a substantial degree, the ALJ's explanation says nothing about whether Plaintiff's *other* symptoms had responded positively to treatment. *See Lizeth A. v. Comm'r of Soc. Sec.*, No. 1:17-cv-03074-MKD, 2018 WL 4179097, at *5 (E.D. Wash. Aug. 7, 2018) (quoting *Ghanim*, 763 F.3d at 1162) ("Observations of improvement must be 'read in context of the overall diagnostic picture' of an individual, and improvement in some symptoms does not indicate nondisability under the Social Security Act."). In sum, the ALJ did not elaborate on how Plaintiff's purported improvement related to her symptom testimony, nor did he establish that Plaintiff's symptoms as a whole are controlled such that Plaintiff is not disabled. *See Lopez v. Colvin*, 194 F. Supp. 3d 903, 911 (D. Ariz. 2016) (quoting *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)) ("But to reject a claimant's testimony, it is not enough for the ALJ to show that the [symptoms were] responsive to treatment; the ALJ must show that the [symptoms were] 'controlled,' *i.e.*, no longer debilitating."). Thus, this is not a clear and convincing reason for discrediting her

testimony.

Third, the fact that Plaintiff unilaterally stopped taking prescribed medications is not necessarily inconsistent with Plaintiff's symptom testimony, and the ALJ did not explain whether or how it was inconsistent. The ALJ simply stated that—with regard to Plaintiff's difficulties with speech and word finding, low concentration, frequent exhaustion, and memory loss—Plaintiff "was prescribed appropriate medications, but reports that the medications were ineffective and she subsequently stopped taking the medication." (AR 35). The ALJ stopped there. Defendant cites to *Molina*, (*see* Doc. 18 at 8), a Ninth Circuit case providing that a claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" may be considered in assessing a claimant's credibility. *Molina v. Astrue*, 674 F.3d 1104, 1113–14 (9th Cir. 2012). But *Molina* does not describe the present situation, at least based on the ALJ's discussion of Plaintiff's symptom testimony. Rather, the ALJ expressly recognized that Plaintiff found the prescriptions *ineffective*, and the ALJ—aside from stating that the prescriptions were "appropriate"—did not offer any explanation to the contrary, *i.e.*, that the prescriptions were effective at controlling or minimizing Plaintiff's symptoms. Thus, the Court cannot say that Plaintiff's decision to stop taking the medications was an "unexplained or inadequately explained failure to seek treatment" because, at least according to the ALJ's decision, Plaintiff believed that the medication was not working— a reasonably adequate explanation for one to stop taking a prescription. In sum, the ALJ failed to meaningfully elaborate on how Plaintiff's decision to stop taking certain medications—*medications which she reported were ineffective*—related to her symptom testimony, let alone how such a decision by Plaintiff contradicted or undermined specific parts of Plaintiff's symptom testimony.

The last remaining reason is that Plaintiff's symptom testimony is inconsistent with the medical record. (*See* AR 34 ("As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the claimant's alleged physical limitations are not well supported by the record.")). The ALJ

noted that evaluations immediately after the motor vehicle accident showed that Plaintiff "was alert and oriented, speech clear and fluent, and that she was able to comprehend two-step commands." (AR 34). The ALJ also pointed to a September 2019 MRI which "showed no acute intracranial findings." (AR 35). The ALJ also cited to "neurological examinations [] not[ing] benign findings" and "[t]reatment notes not[ing] normal strength, range of motion, and gait." (*Id.*). Such references to the medical record did not sufficiently satisfy the ALJ's duty to provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony because the ALJ failed draw connections between these references to the medical record and specific aspects of Plaintiff's symptom testimony that he found to be discredited. *See Nelson v. Comm'r of Soc. Sec. Admin.*, No. CV-19-08027-PCT-JZB, 2020 WL 1510332, at *3 (D. Ariz. Mar. 30, 2020) ("Indeed, this Court has repeatedly rejected ALJ rationale that discussed medical evidence but provided no connection between that discussion and rejection of claimant's symptom testimony."). Moreover, Plaintiff cites to numerous other medical records—from both before and after the records cited by the ALJ—*supporting* her symptom testimony.

Finally, even assuming that the ALJ sufficiently explained how the medical evidence undermined Plaintiff's symptom testimony—and even ignoring Plaintiff's competing citations to the records—this reason alone cannot suffice for discrediting subjective symptom testimony. The Ninth Circuit has held that "once the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based *solely* on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (emphasis added). This rule recognizes that "pain is a subjective phenomenon," and it "cannot be objectively verified or measured." *Id.* (citation omitted). Even assuming that Plaintiff's symptom testimony was unsupported by the medical evidence, then, it is insufficient support on its own to discredit the testimony. In sum, the Court finds that the ALJ erred in rejecting Plaintiff's subjective symptom testimony.

///

## IV. CONCLUSION

In conclusion, the Court agrees with Plaintiff that although the ALJ "provided a short summary of some of [Plaintiff]'s medical records . . . and included some benign findings on examinations," the ALJ "failed to tie-in the characterization of the medical record with any specific alleged inconsistency within [Plaintiff]'s symptom testimony." (*See* Doc. 14 at 9). The ALJ erred because he did not specifically identify which parts of Plaintiff's symptom testimony he found to be uncredible and thereby failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony.

Finding error in the ALJ's evaluation and discussion of the evidence, this case will be remanded. "The proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (internal quotation marks omitted). Plaintiff argues instead that the Court should apply the credit-as-true rule and remand for calculation of benefits. One of the requisite conditions for applying the credit-as-true rule, however, is that "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison v. Colvin*, 759 F.3d 995, 1020–21 (9th Cir. 2014) ("[The Court has] flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."). The Court finds that this case would benefit from further administrative proceedings to develop and clarify the record.

Accordingly,

**IT IS ORDERED** that the April 29, 2021 final decision (AR 29–38) of the Commissioner of Social Security is **vacated** and this matter is **remanded** to the Commissioner of Social Security for further proceedings consistent with this Order.

///

///

///

///

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and **terminate this action**.

Dated this 24th day of May, 2023.

Honorable Steven P. Logan
United States District Judge